Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
01/15/2016 12:05 PM CST

State of Nebraska, appellee, v.
De'Aris R. Trice, appellant.
___ N.W.2d ___

Filed January 15, 2016.    No. S-14-1139.

1. **Rules of Evidence: Hearsay: Witnesses: Proof: Appeal and Error.**
   For purposes of hearsay analysis, it is within the discretion of the trial
   court to determine whether the unavailability of a witness has been
   shown. Where the rules of evidence commit the evidentiary question at
   issue to the discretion of the trial court, the admissibility of evidence is
   reviewed for an abuse of discretion.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists
   only when the reasons or rulings of a trial judge are clearly untenable,
   unfairly depriving a litigant of a substantial right and denying a just
   result in matters submitted for disposition.
3. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings
   under the residual hearsay exception, an appellate court reviews for
   clear error the factual findings underpinning a trial court's hearsay rul-
   ing and reviews de novo the court's ultimate determination whether the
   court admitted evidence over a hearsay objection or excluded evidence
   on hearsay grounds.
4. **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
   tence imposed within the statutory limits absent an abuse of discretion
   by the trial court. An abuse of discretion in imposing a sentence occurs
   when a sentencing court's reasons or rulings are clearly untenable and
   unfairly deprive the litigant of a substantial right and a just result.
5. **Witnesses: Evidence: Proof.** The burden to establish a declarant's
   unavailability is on the party seeking to introduce the evidence.
6. **Criminal Law: Trial: Witnesses: Evidence.** In a criminal case, a wit-
   ness is not unavailable unless the prosecutorial authorities have made a
   good faith effort to obtain the witness' presence at trial. There must be
   evidence of diligence on the part of the prosecution to locate the witness
   and evidence of the unavailability of the witness to testify.

7. **Rules of Evidence: Witnesses.** When considering whether a good faith effort to procure a witness has been made under Neb. Rev. Stat. § 27-804(1)(e) (Reissue 2008), the proper inquiry is whether the means utilized by the proponent prior to trial were reasonable, not whether other means remain available at the time of trial or whether additional steps might have been undertaken.

8. **Trial: Evidence: Appeal and Error.** On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered to the trier of fact.

9. **Appeal and Error.** An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.

10. ____. In the absence of plain error, where an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

11. **Convictions: Evidence.** Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.

12. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

13. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

14. ____: ____. An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

Appeal from the District Court for Madison County: James G. Kube, Judge. Affirmed.

Patrick P. Carney, of Carney Law, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Wright, Connolly, McCormack, Miller-Lerman, Cassel, and Stacy, JJ.

Stacy, J.

## I. INTRODUCTION

This is the second direct appeal brought by De'Aris R. Trice, challenging his conviction for second degree murder. In his first direct appeal, we concluded the jury had not been properly instructed on the interplay between second degree murder and sudden quarrel manslaughter.[1] We noted the step instruction used by the trial court was correct when given, but our subsequent holding in *State v. Smith*[2] rendered the instruction an incorrect statement of the law. We reversed the judgment and remanded the cause for another trial.

On remand, Trice waived a jury. Following a 2-day bench trial, he again was found guilty of second degree murder and again was sentenced to a prison term of 40 years to life. He timely filed this direct appeal, assigning error to various evidentiary rulings and arguing the sentence imposed was excessive. Finding no reversible error, we affirm.

## II. BACKGROUND

On December 26, 2010, Timothy Warren was stabbed when a fight broke out during a party in Norfolk, Nebraska. Warren died from his injuries.

Our opinion in *State v. Trice*[3] recited the circumstances surrounding the stabbing and summarized the evidence adduced at Trice's first trial. In most respects, the evidence adduced at Trice's second trial was similar to that adduced at his first trial. We recite here only that evidence from the second trial which is relevant to the errors assigned on appeal.

---

[1] See *State v. Trice*, 286 Neb. 183, 835 N.W.2d 667 (2013).

[2] *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

[3] *State v. Trice, supra* note 1.

### 1. Testimony of Robyn Baldwin

In the first trial, Robyn Baldwin testified and was cross-examined. She was subpoenaed to appear as a witness in the second trial, but failed to appear. In the first trial, Baldwin testified that the day before the stabbing, she overheard her sister, Trice's girlfriend, tell him she wanted to end the relationship. Baldwin then heard Trice respond: "'Well, if you're done with me, then I might as well just kill myself or hurt somebody . . . I'll just go murder somebody. I might as well be in jail without you in my life.'"

Roughly 1 month before Trice's second trial, the State served Baldwin with a subpoena to testify. The deputy sheriff who served the subpoena testified he called Baldwin on her cell phone and she agreed to meet him later that day to accept service. He personally served Baldwin with the subpoena.

The district court clerk who was responsible for checking in subpoenaed witnesses during the second trial testified that Baldwin had not appeared and had not telephoned the court to indicate she would be late. A Norfolk police officer who was familiar with Baldwin also testified he had "been all through" the courthouse while witnesses were showing up for trial and did not see Baldwin.

The State asked the court to find Baldwin unavailable under Neb. Rev. Stat. § 27-804(1)(e) (Reissue 2008) and offered a transcript of Baldwin's testimony from the first trial. Trice objected, pointing out Baldwin lived in the area and "had been found" previously. The trial court concluded Baldwin was unavailable and received the transcript of her testimony from the first trial into evidence over Trice's hearsay objection.

### 2. Testimony of Ronald Trice

Trice's brother Ronald testified and was cross-examined in the first trial but was not present for the second trial. In the first trial, Ronald testified about Trice's activities in the days leading up to the party and described what happened

during the party, both before and after the stabbing. Ronald also testified about a conversation he had with Trice shortly after the stabbing. During this conversation, Ronald asked Trice "five or six times" whether he was responsible for the stabbing and each time Trice denied stabbing anyone. Ronald then said, "'I don't need you to lie to me, did you do it?'" to which Trice replied, "'Yeah, I — I had to, I had to protect you and me.'"

About 6 weeks before the second trial, the State filed a "Certificate to Compel Attendance of Witness" seeking to have Ronald served with process in Chicago, Illinois, where it was understood he was living. Roughly 20 days before trial, the State discovered the paperwork had not arrived in Chicago due to a clerical mistake. The paperwork was immediately reissued, and the State contacted the extradition unit in Chicago to request expedited service. The extradition unit agreed to make it a "top priority" and indicated it would use investigators to locate and serve Ronald. The State stayed in contact with the authorities in Chicago up to and including the time of trial. One week before trial, Chicago authorities reported an investigator had gone to Ronald's address to attempt service. The investigator made contact there with Ronald's parents, who reported Ronald was no longer in Illinois. The investigator was unable to serve Ronald and did not have any other information on his whereabouts, but did learn Ronald might be planning to return to Norfolk for trial. The possibility that Ronald planned to be in Norfolk during trial was supported by Ronald's former girlfriend, who testified she asked Ronald "whether or not he's going to appear in court," and he replied that "he will be in town, but he's not testifying."

The State suggested Ronald was actively resisting efforts to procure his attendance and asked the trial court to find him unavailable under § 27-804(1)(e). Trice argued the State had not made a sufficient effort to procure Ronald's attendance and thus had not shown he was unavailable. The court found

Ronald was unavailable and received the transcript of his testimony from the first trial into evidence over Trice's hearsay objection.

### 3. Testimony of Guadalupe Reyes

Guadalupe Reyes testified that at the time of the stabbing, she was dating Jaron Hoard. Hoard was one of two eyewitnesses who testified to seeing Trice stab the victim. Reyes did not attend the party, but she testified that a few hours after the party, Hoard came home "crying" and under "[a] lot of stress." Reyes asked Hoard what was wrong, and he replied that "his friend got stabbed." Trice objected to Reyes' testimony regarding Hoard's statement on hearsay grounds. The trial court overruled the hearsay objection, finding the statement was admissible as a prior consistent statement under Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 2008). The trial court expressly rejected the State's alternative theory that Hoard's statement was admissible as an excited utterance under Neb. Rev. Stat. § 27-803(1) (Reissue 2008).

### 4. Telephone Call Between Trice and His Father

After Trice was arrested and while he was being held in jail, Trice had a telephone conversation with his father. The conversation was recorded by the jail. A portion of the call was transcribed and offered by the State at the second trial. The transcript shows Trice's father asked him, "What are you pleading?" and Trice answered, "Not Guilty." His father then asked, "By reason of what? Self-defense?" and Trice replied, "Yes sir." The State suggested Trice's response (that he planned to claim self-defense) amounted to an admission that he had stabbed the victim.

Trice objected to the admission of the transcript on grounds his father's statements were inadmissible hearsay. The court overruled the hearsay objection and received the transcript into evidence, concluding the conversation amounted to an adoptive admission under § 27-801(4)(b).

At the conclusion of the 2-day bench trial, Trice was found guilty of second degree murder. After requesting an update to the presentence investigation, the trial court sentenced Trice to a term of 40 years to life in prison. Trice timely appealed.

## III. ASSIGNMENTS OF ERROR

Trice assigns the trial court erred in (1) finding Baldwin and Ronald unavailable and admitting transcripts of their testimony from the first trial over Trice's hearsay objection, (2) admitting Reyes' testimony over Trice's hearsay objection, (3) admitting the transcript of the jail call over Trice's hearsay objection, and (4) imposing an excessive sentence.

## IV. STANDARD OF REVIEW

[1,2] For purposes of hearsay analysis, it is within the discretion of the trial court to determine whether the unavailability of a witness has been shown.[4] Where the rules of evidence commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion.[5] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[6]

[3] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.[7]

---

[4] See, *State v. Kitt*, 284 Neb. 611, 823 N.W.2d 175 (2012); *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998).

[5] *State v. Kitt, supra* note 4.

[6] *Id.*

[7] *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012).

[4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[8] An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result.[9]

## V. ANALYSIS

### 1. Hearsay Exception: Unavailability Under § 27-804(1)(e)

Trice claims the trial court erred when it found Baldwin and Ronald were unavailable and admitted transcripts of their prior trial testimony under the exception to hearsay found in § 27-804(2)(a). Under that statute, testimony given by a witness at a prior proceeding is not "excluded by the hearsay rule if the declarant is unavailable as a witness."[10]

Section 27-804(1)(e) defines "unavailability" to include situations where a witness "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means." A declarant is not unavailable if his absence is due to the "wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying."[11]

[5,6] The burden to establish a declarant's unavailability is on the party seeking to introduce the evidence.[12] In a criminal case, a witness is not unavailable unless the prosecutorial authorities have made a good faith effort to obtain the witness'

---

[8] *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014).

[9] *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006).

[10] § 27-804(2).

[11] § 27-804(1)(e). Accord *State v. Wiley*, 223 Neb. 835, 394 N.W.2d 641 (1986) (holding requirement of unavailability under § 27-804 is not satisfied if proponent has caused unavailability).

[12] *State v. Carter, supra* note 4.

presence at trial.[13] There must be evidence of diligence on the part of the prosecution to locate the witness and evidence of the unavailability of the witness to testify.[14] For purposes of hearsay analysis, it is within the discretion of the trial court to determine whether the unavailability of a witness has been shown.[15]

Trice assigns error to the court's finding of unavailability, arguing the State failed to make a good faith effort to procure the attendance of both Baldwin and Ronald at the second trial. We analyze the State's efforts regarding each witness separately.

### (a) Unavailability of Baldwin

In prior cases, we have addressed unavailability when a witness cannot be located,[16] when a witness is outside the subpoena power of the court,[17] and when a witness is present at trial but refuses to testify.[18] This case presents our first opportunity to address unavailability when a witness has been located and served with a subpoena, but fails to appear for trial.

We begin by noting that the plain language of § 27-804(1)(e) provides a witness can be procured "by process or other reasonable means." We understand this language to indicate process is not just one of the reasonable means of procuring a witness at trial, it is the preferred means. When a witness against an accused in a criminal case is within the reach of process, the prosecution generally must resort to process to

---

[13] *Id.*

[14] *Callies v. State*, 157 Neb. 640, 61 N.W.2d 370 (1953).

[15] *State v. Kitt, supra* note 4; *State v. Carter, supra* note 4.

[16] *State v. Carter, supra* note 4.

[17] *State v. Carter*, 226 Neb. 636, 413 N.W.2d 901 (1987); *State v. Williams*, 211 Neb. 693, 320 N.W.2d 105 (1982).

[18] *State v. Kitt, supra* note 4.

satisfy the good faith standard.[19] This is so even when a wit-
ness is outside a court's subpoena power.[20] While issuance of
a subpoena is not an absolute prerequisite to proving a witness
is unavailable,[21] serving a witness with a subpoena to testify
ordinarily constitutes a sufficient good faith effort to procure
the witness' attendance at trial.[22]

Trice argues that merely serving the subpoena on Baldwin
was insufficient evidence of good faith. He argues that when
Baldwin failed to appear, the State should have requested a
bench warrant, and he suggests it was error to find Baldwin
unavailable before additional steps were taken to enforce
the subpoena.

In *Ohio v. Roberts*,[23] the U.S. Supreme Court explained that
"'[t]he lengths to which the prosecution must go to produce a
witness . . . is a question of reasonableness.'" The Court rec-
ognized a temporal component to the good faith inquiry when
it observed that "[t]he ultimate question is whether the witness
is unavailable despite good-faith efforts undertaken *prior to
trial* to locate and present that witness."[24]

_____

[19] 2 McCormick on Evidence § 253 (Kenneth S. Broun et al. eds., 7th ed.
2013).

[20] See *Barber v. Page*, 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968)
(where witness was inmate housed in another state, good faith effort to
obtain presence of witness at trial required prosecution to at least attempt
to secure his presence through available process, such as writ of habeas
corpus ad testificandum).

[21] *Hardy v. Cross*, ___ U.S. ___, 132 S. Ct. 490, 181 L. Ed. 2d 468 (2011).

[22] See, e.g., *Morgan v. State*, 903 N.E.2d 1010 (Ind. App. 2009); *Cross v.
State*, 144 Md. App. 77, 796 A.2d 145 (2002); *State v. Schilling*, 474
N.W.2d 203 (Minn. App. 1991); *State v. Dillon*, 191 W. Va. 648, 447
S.E.2d 583 (1994).

[23] *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)
(quoting *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed.
2d 489 (1970) (Burger, C.J., concurring)), *abrogated on other grounds,
Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177
(2004).

[24] *Id*. (emphasis supplied).

[7] When considering whether a good faith effort to procure a witness has been made under § 27-804(1)(e), the proper inquiry is whether the means utilized by the proponent prior to trial were reasonable, not whether other means remain available at the time of trial or whether additional steps might have been undertaken.[25] "[W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence," but the prosecution is not required "to exhaust every avenue of inquiry" to demonstrate unavailability.[26]

We find no abuse of discretion in the trial court's conclusion that Baldwin was unavailable. The State made a good faith effort to secure Baldwin's attendance at trial by personally serving her with a subpoena to testify roughly 1 month before trial. And while Baldwin ultimately failed to obey the subpoena, there was no evidence her absence at trial was due to any prosecutorial wrongdoing.

We are not persuaded by Trice's argument that unavailability was not shown because no bench warrant was issued after Baldwin failed to appear. When a subpoenaed witness fails to comply with process and is absent from the trial due to no wrongdoing of the proponent, decisions about whether additional efforts to obtain the presence of the witness would be successful or practicable are properly left to the discretion of the trial court.[27]

On this record, the trial court did not abuse its discretion by making the unavailability determination without first requiring

---

[25] See *Hardy v. Cross, supra* note 21. See, also, 23 C.J.S. *Criminal Law* § 1476 at 458 (2006) ("[t]he question is whether good-faith efforts were made to procure the testimony of a witness, not whether increased efforts would have produced testimony").

[26] *Hardy v. Cross, supra* note 21, 132 S. Ct. at 495.

[27] Accord *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992) (superseded in part by statute as stated in *Walton v. Patil*, 279 Neb. 974, 783 N.W.2d 438 (2010)).

efforts to enforce the subpoena. We assume a motion for bench warrant would have been sustained if requested, but no such request was made. And when the issue of unavailability was presented to the trial court for ruling, neither party suggested a ruling was premature or should be postponed, or that additional steps would be successful in obtaining Baldwin's presence. While the trial court certainly had discretion—even without a motion—to issue an attachment for the arrest of Baldwin when she failed to obey the subpoena,[28] we cannot conclude it was an abuse of discretion not to issue an attachment under the circumstances.[29] This assignment of error is without merit.

### (b) Unavailability of Ronald

The State did not locate Ronald or serve him with process compelling his appearance as a witness in the second trial. The issue on appeal is whether the prosecution made a diligent, good faith effort to locate Ronald and procure his attendance at the second trial.[30]

In *Callies v. State*,[31] we found reversible error in the trial court's conclusion that the witness was unavailable. The record contained little more than the prosecutor's unsworn statement that a subpoena had been "issued and returned,"[32] unserved, and the prosecutor's suggestion that the "witness could not

---

[28] Neb. Rev. Stat. § 25-1230 (Reissue 2008) (when witness fails to appear in obedience to subpoena, courts "may issue an attachment to the sheriff . . . to arrest and bring the person therein named before the court" to give his or her testimony and "answer for the contempt").

[29] See, e.g., *Hardy v. Cross, supra* note 21; *Cross v. State, supra* note 22 (holding trial court did not abuse its discretion in finding unavailable two witnesses who had been subpoenaed but failed to appear at trial, despite fact that prosecution did not request attachment order to hold witnesses in jail).

[30] *State v. Carter, supra* note 4; *Callies v. State, supra* note 14.

[31] *Callies v. State, supra* note 14.

[32] *Id*. at 648, 61 N.W.2d at 376.

be located."[33] We observed that neither the subpoena nor the return was in evidence and that the prosecution had not offered testimony from any officer who attempted to serve the subpoena. As such, we had no evidence on which to determine whether a diligent search had been conducted, whether the whereabouts of the witness were known, or whether the witness could be located. We announced "[t]here must be evidence of diligence on the part of the prosecution to locate the witness, and evidence of the unavailability of the witness to testify."[34]

In *State v. Williams*,[35] we found no abuse of discretion in the trial court's ruling that one of the witnesses who had testified at the preliminary hearing was unavailable at the time of trial. The evidence established that about 1 week before trial, the prosecution learned the witness had moved from the area and was living at an address in either Creston, Iowa; Creston, Nebraska; or Crescent, Iowa. A police officer attempted to contact the witness in all three towns, and eventually determined the address in Crescent was correct. The officer contacted the sheriff's office in Crescent and asked that a deputy be sent to the address to serve a subpoena. Despite these efforts, by the time trial commenced, the witness had not been located and the subpoena remained unserved. We concluded the prosecution had made a reasonably diligent search and inquiry into the witness' whereabouts, and there was sufficient evidence to establish the witness was unavailable at the time of trial.

In *State v. Carter*,[36] we found the prosecution had met its burden of showing good faith and diligence in attempting to locate and produce a witness who had testified in the

---

[33] *Id.*

[34] *Id*. at 649, 61 N.W.2d at 376.

[35] *State v. Williams, supra* note 17.

[36] *State v. Carter, supra* note 4.

defendant's first murder trial, but had not been located or served with process before his subsequent trial. The evidence showed that about 2 weeks before the subsequent trial began, the State filed a praecipe for subpoena to compel the witness' attendance. Efforts to serve the subpoena at known addresses for the witness were unsuccessful. Officers contacted relatives, and eventually learned the witness had moved to Arkansas. Officers contacted authorities there and learned the witness had applied for an Arkansas driver's license several months earlier using an address in West Helena, Arkansas. Prosecutors then requested an order compelling attendance of the witness and relayed it to the court in West Helena, which court subsequently issued the order and delivered it to the local police department for service. Arkansas police searched for the witness but could not locate her. Arkansas police spoke to the witness' sister, who was uncooperative and reported she had not seen the witness for a week. A car registered to the witness was placed under surveillance, but the witness had not been located by the time of the hearing to determine unavailability, which was scheduled 2 days before the start of trial. After reviewing the record, we concluded the State had made a good faith, diligent effort to locate the witness prior to trial and the court had not abused its discretion in finding the witness was unavailable.

Our review of the record in the present case shows the prosecution's efforts to locate and serve Ronald were strikingly similar to those we found in *Carter* had satisfied the standard of diligence and good faith. Here, the prosecution demonstrated considerable coordination with out-of-state authorities in an effort to locate and serve Ronald with process to compel his attendance at trial. Those coordinated efforts began well in advance of trial and continued up to the time of trial. We conclude there was no abuse of discretion in the trial court's finding that the State made a diligent, good faith effort to locate Ronald and secure his presence at trial and that Ronald was unavailable under § 27-804(1)(e).

(c) Unavailability and
Confrontation Clause

[8-10] In his brief, Trice also argues the admission of Baldwin's and Ronald's prior testimony violated his rights under the Confrontation Clause. However, Trice did not raise a Confrontation Clause objection at trial. On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered to the trier of fact.[37] An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.[38] In the absence of plain error, where an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[39] Finding no plain error in the trial court's ruling concerning the unavailability of Baldwin and Ronald, we reject Trice's Confrontation Clause argument without further discussion.

2. Reyes' Testimony as Hearsay

Over Trice's hearsay objection, the court permitted Reyes to testify that when Hoard arrived home from the party, he told her "his friend got stabbed." The trial court concluded Hoard's statement was admissible as a prior consistent statement under § 27-801(4)(a)(ii). The court expressly rejected the State's alternative position that Hoard's statement was admissible as an excited utterance under § 27-803(1).

On appeal, Trice argues the trial court erred in overruling his hearsay objection because Hoard's testimony had not been attacked in such a manner that a prior consistent statement was warranted to rebut an express or implied charge of recent

---

[37] *State v. Shipps*, 265 Neb. 342, 656 N.W.2d 622 (2003).

[38] *Id.*

[39] *State v. Taylor*, 262 Neb. 639, 634 N.W.2d 744 (2001).

fabrication.[40] The State concedes in its brief that the elements necessary to admit a prior consistent statement are not present. However, the State suggests it was not reversible error to overrule the hearsay objection, because Hoard's statement should have been admitted under the excited utterance exception to the hearsay rule.[41]

Even assuming the statement "his friend got stabbed" was being offered for its truth, we need not consider whether Hoard's statement to Reyes was an excited utterance or a prior consistent statement, because we conclude any error in overruling Trice's hearsay objection and admitting the statement was harmless. The evidence was cumulative, because Hoard also testified about his statement to Reyes. In the second trial, Hoard testified that after he returned home, he told Reyes, "I just seen my — I just witnessed my friend just get stabbed." The admission of Hoard's own testimony in this regard is not assigned as error on appeal.

[11] Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.[42] We conclude that any error in admitting Reyes' testimony was harmless beyond a reasonable doubt and does not require reversal.

### 3. TRANSCRIPT OF TELEPHONE CALL AS HEARSAY

Trice argues the trial court erred in overruling his hearsay objection to the partial transcript of the jail call between Trice and his father. The State responds that the conversation amounted to an adoptive admission under § 27-801(4)(b)(ii) and that the court correctly overruled the hearsay objection on that ground.

---

[40] See § 27-801(4)(a)(ii).

[41] See § 27-803(1).

[42] *State v. Rieger*, 260 Neb. 519, 618 N.W.2d 619 (2000).

Section 27-801(4)(b) excludes from the definition of hearsay a statement which is "offered against a party and is . . . (ii) a statement of which he has manifested his adoption or belief in its truth." "Where the party against whom a statement is offered is present, hears the statement being made, and makes no objection" the trial court may admit such evidence as nonhearsay.[43]

Here, Trice and his father were talking to one another on the telephone. When Trice told his father he was entering a plea of not guilty, his father asked, "By reason of what? Self-defense?" Trice replied, "Yes sir." Assuming without deciding that the father's question constituted an assertion subject to the hearsay rule, it is clear Trice heard his father's words and expressed agreement with them. The trial court correctly overruled Trice's hearsay objection and admitted this as nonhearsay under § 27-801(4)(b)(ii).

Trice also argues that admission of the jail-call transcript violated his rights under the Confrontation Clause. We do not reach this argument, because Trice did not raise a Confrontation Clause objection at trial, and he cannot now assert a different ground for his objection than was offered to the trier of fact.[44]

### 4. Excessive Sentence

Trice was convicted of second degree murder, a Class IB felony.[45] The statutory sentencing range for Class IB felonies is 20 years to life in prison.[46] Trice was sentenced to a prison term of 40 years to life—the same indeterminate sentence imposed following his first trial.

[12-14] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality,

---

[43] *In re Interest of M.*, 215 Neb. 383, 390, 338 N.W.2d 764, 769 (1983).

[44] *State v. Shipps, supra* note 37.

[45] See Neb. Rev. Stat. § 28-304 (Reissue 2008).

[46] Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2014).

(3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[47] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[48] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[49]

Trice concedes his sentence of 40 years to life in prison is within the statutory range, but argues on appeal that the maximum term of life in prison amounts to an abuse of discretion. Trice suggests the trial court did not give sufficient consideration to his age, his educational struggles, or his limited criminal history. Our review of the record shows otherwise.

When imposing sentence, the trial court considered the information in the original and updated presentence investigation reports and the information provided during both sentencing hearings. The presentence report indicates Trice was 21 years old when the crime was committed. He dropped out of school in the 10th grade and was diagnosed with a learning disability. Trice had an extensive juvenile history in both Illinois and Nebraska, but this murder was his first felony conviction as an adult. In addition to the information in the presentence report, the court asked Trice several questions about his family relationships and his educational progress. When announcing the sentence, the court emphasized the tragic

---

[47] *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013); *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[48] *State v. Dixon, supra* note 47; *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011).

[49] *State v. McGuire, supra* note 47.

nature of the crime, the senseless loss of life, Trice's lack of remorse, and his continued refusal to accept responsibility for the crime.

We also note the State recommended that the sentence be increased from what was imposed after the first trial, pointing to evidence in the second trial that Trice had made "efforts to thwart justice" and tried to "harm or get rid of" one of the State's eyewitnesses. The court rejected the State's recommendation and instead found no sufficient basis on which to either increase or decrease the previously imposed sentence of 40 years to life in prison.

Contrary to Trice's assertions on appeal, there is no evidence that the district court failed to consider all of the relevant factors in imposing sentence. After reviewing the record, we find no abuse of discretion in the sentence imposed by the trial court and conclude Trice's assertions to the contrary are meritless.

## VI. CONCLUSION

Finding no reversible error in any of the assignments of error on appeal, we affirm the judgment and sentence of the trial court in all respects.

Affirmed.

Heavican, C.J., not participating.