## CHARLES PUMPHREY v. STATE OF NEBRASKA.

FILED JUNE 11, 1909. No. 15,734.

1. **Criminal Law:** SELECTING JURY. A judgment of conviction will not be set aside because of alleged error in overruling defendant's challenges for cause to veniremen, where none of said persons sat upon the jury, and it does not affirmatively appear that they were peremptorily challenged by him.

2. ———: ———: DISCRETION OF COURT. The trial court is vested

Pumphrey v. State.

with great discretion in excluding veniremen or talesmen from a jury, and its rulings in that particular are not subject to review unless a fair jury was not obtained.

3. Homicide committed in the perpetration of a robbery is murder in the first degree, and in such a case the turpitude of the act supplies the element of deliberate and premeditated malice.

4. Criminal Law: OPENING STATEMENT: REVIEW. In a prosecution for the alleged commission of a crime, the defendant may waive his opening statement to the jury,, but if the court compels counsel, over their objections, to make that statement, the error is without prejudice, unless it affirmatively appears from the record that defendant suffered some disadvantage thereby.

5. Witnesses: OATH: COMPETENCY. An adult citizen of the empire of Japan is *prima facie* competent to take an oath and testify in the courts of this state. If a litigant conceives that such a witness does not understand, or will not give heed to, the oath administered, he may interrogate the witness before he is sworn, on prove his incompetency by other relevant evidence. If he fails to do so, the relevant testimony of the witness should be received.

6. Criminal Law: WITNESSES: EXAMINATION. The trial judge in his discretion may refuse to permit a witness to testify in narrative form, and his ruling will not be reviewed unless that discretion was clearly abused.

7. ———: EVIDENCE: REVIEW. It is the province of a jury in a criminal case to try the issue joined by a plea of not guilty, and, if the evidence of the state uncontradicted will support a conviction, this court will not ordinarily interfere with a verdict against the defendant.

ERROR to the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Carl E. Herring* and *John O. Yeiser,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

ROOT, J.

Plaintiff in error was convicted of committing murder while in the perpetration of a robbery, and, from a sen-

tence of imprisonment in the state penitentiary for life, has appealed to this court.

1. The first error argued is that the court should not have overruled defendant's challenges for cause to various veniremen because thereby he was compelled to exhaust his peremptory challenges. The bill of exceptions discloses the challenges and the court's rulings, but none of those veniremen were sworn or acted as jurors in the case. Whether they were eventually excluded by the court on its own motion, by agreement of the state and defendant, upon a subsequent challenge of the state, or peremptorily by defendant, does not appear. The record therefore does not support the contention of defendant, and the error assigned will be resolved against him. *Shumway v. State,* 82 Neb. 165; *Kennison v. State,* 83 Neb. 391.

2. Defendant also claims that the court should not have excused the veniremen London, Thomas, Schmidt and Winans. The first named individual was excused because his answers indicated that he did not possess sufficient intelligence to perform the duties of a juror. The answers were contradictory, and the court did not err in dismissing this man from the jury. Defendant was being tried for murdering a Chinaman, and the answers of Thomas, Schmidt and Winans indicated that because of the nationality of the deceased they would not be inclined to convict defendant. Other veniremen were excused because they had conscientious scruples against inflicting the death penalty. There is nothing in the record to indicate that 12 impartial men were not secured to act as jurors in the case, and the court ruled wisely and justly in excusing the men first referred to. *Richards v. State,* 36 Neb. 17; *State v. Miller,* 29 Kan. 43. The veniremen whose *voir dire* examination disclosed that they were prejudiced against inflicting the death penalty were also properly excluded from the jury. *Rhea v. State,* 63 Neb. 461.

3. An assault is made upon the information and the

statute under which it was drawn, but the questions presented, as we understand them, have been set at rest in *Morgan v. State*, 51 Neb. 672, and *Rhea v. State*, 63 Neb. 461, and will not be further considered.

4. After the jurors were sworn the county attorney made his opening statement of the case. Defendant's counsel thereupon requested permission to make a statement at the close of the state's evidence. To this the county attorney objected, and the court directed defendant's counsel to state the defense, although they desired to waive that statement. It has been held in other jurisdictions, in construing statutes as mandatory as section 478 of the criminal code, that the prosecution may introduce evidence without a preliminary opening statement. *Holsey v. State*, 24 Tex. App. 35; *People v. Stoll*, 143 Cal. 689; *People v. Weber*, 149 Cal. 325. Much stronger reasons exist for permitting a defendant to waive his statement of defense, and, if he is content to rest upon his plea of not guilty, the court ought to permit him to do so. On the other hand, there is nothing in the record to indicate what statements defendant's counsel made, nor that he was prejudiced thereby. The error was without prejudice.

5. One Jack Naoi was called as a witness by the prosecution, and upon the county attorney's statement that the witness was a citizen of Japan, and could not speak the English language, an interpreter was produced. Defendant's counsel objected to the witness being sworn for the alleged reason that Japan is a heathen country; that *prima facie* the witness was not qualified to take an oath, and that the state ought to remove that presumption before the oath was administered. The objection was overruled, the witness sworn, and his testimony given through the medium of an interpreter. Counsel for defendant cite *Speer v. See Yup Co.*, 13 Cal. 73, but that case is not in point. The opinion therein was controlled by a statute absolutely disqualifying Indians as witnesses, and in *People v. Hall*, 4 Cal. 399, the same court

had construed the word "Indian" as including the Mongolian race. Section 328 of the code provides that every human being, with certain named exceptions, of sufficient capacity to understand the obligations of an oath is a competent witness in all cases, civil and criminal. Among the exceptions are "Indians and negroes who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them intelligently and truly." We are not inclined to adopt the reasoning of the California court that the legislature intended to include the Japanese in the foregoing exception, but, if such were the case, the answers of the witness to the questions propounded through the interpreter clearly take him without the exception.

Section 365 of the code provides: "Before testifying, the witness shall be sworn to testify the truth, the whole truth and nothing but the truth. The mode of administering an oath shall be such as is most binding upon the conscience of the witness." It is urged that the witness was an idolater, and would not be bound by an appeal to the "invisible God" of the Christians. In *Priest v. v. State*, 10 Neb. 393, we approved Bouvier's definition of an oath as "an outward pledge given by the person taking it that his attestation or promise is made under an immediate sense of his responsibility to God." In that case an Indian was held to be incompetent to testify. The Japanese, however, are a civilized people, and have at least three recognized religions—Buddhism, Shintoism and Christianity. No efforts were made by defendant's counsel to prove that the witness was not a Christian, nor did they examine him to ascertain whether he understood the obligations of the oath that was thereafter administered to him. The rule seems to be well established that, unless an adult witness comes within some exception to the general rule, the presumption is that he is competent to testify, and the burden is upon the objecting party to establish the contrary. This may properly be done by preliminary questions propounded to the proposed wit-

ness, or by any other of the known methods of establishing a fact. The issue will then be determined by the court. 2 Elliott, Evidence, sec. 778; *Arnd v. Amling,* 53 Md. 192; *Donnelly v. State,* 26 N. J. Law, 463, 506; *Territory v. Yee Shun,* 3 N. M. 100. Counsel for defendant not having established that the oath administered was not in form to bind the conscience or awaken the apprehension of the witness, this assignment of error must be overruled.

6. Defendant testified in his own behalf. His counsel, after leading him up to the assault upon Ham Pak, the deceased, requested witness to go on and relate the transaction. The county attorney objected to an answer in narrative form, and the court compelled defendant's counsel to proceed by questions and defendant by answers thereto, and error is assigned upon this ruling of the court. The subject was one within the court's discretion, and it had authority to compel the investigation to continue by questions and answers, so that the county attorney might exclude incompetent and irrelevant testimony by interposing objections to questions, rather than to break in upon a long statement of fact to object to irrelevant, immaterial or incompetent testimony voluntarily stated by the witness. The trial judge must be permitted to exercise an almost unfettered judgment in controlling this element of practice, and its action, unless plainly a gross abuse of discretion prejudicial to the complaining litigant, will not be reviewed in this court. *Clark v. Field,* 42 Mich. 342. In the instant case the witness gave his version of the crime clearly and succinctly, and he was not in any manner prejudiced by an orderly course of trial.

7. The instructions given were fair. Those requested by defendant and not given were properly refused, and the modification of instruction numbered 5, requested by defendant, was proper. Although we have not specifically mentioned every error assigned in the petition in error,

44

we have examined all of them and find that none of those not referred to in detail in his opinion present any serious question for consideration.

8. It is urged that the probabilities are entirely favorable to defendant's innocence. The testimony is in hopeless conflict. That Ham Pak was murdered and robbed in the county of Douglas during the night of July 10, 1907, is established by the evidence of defendant and that of the witness Mullin. Each accuses the other of committing the crime. There is considerable evidence in the record corroborating defendant, but there are also facts and circumstances shown by the evidence that corroborate Mullin's testimony. It is unfortunate that defendant's impeaching witnesses were all inmates of the state penitentiary, although he was not responsible for their duress, and probably none others were available for his purpose. If the jurors believed Mullin, as they had a right to, they could not conscientiously do otherwise than to find defendant guilty. The questions of fact having been determined by the tribunal whose solemn duty it was to ascertain them, and there being sufficient competent evidence to sustain the verdict, we cannot interfere. The rulings of the court were not favorable to defendant, but were not prejudicially erroneous.

The defendant has received a fair trial within the meaning of the law, and the judgment of the district court is

AFFIRMED.