FRED MORROW V. STATE OF NEBRASKA

300 N. W. 843

FILED NOVEMBER 21, 1941. No. 31232.

*Boyle & Boyle,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is a criminal action which was commenced by the filing of a complaint in the municipal court of the city of Omaha, Douglas county, Nebraska, wherein the defendant, plaintiff in error, Fred Morrow, also known as Fred Marrow, in the language of the statute was charged with keeping and exhibiting gaming tables, devices and apparatus, to win or gain money or other property of value. A warrant was duly issued and the defendant was brought to trial before the court on November 9, 1939. He was duly and regularly arraigned and pleaded not guilty, whereupon a trial was had and the defendant was found guilty and sentence was imposed. From the judgment and sentence of the municipal court an appeal was taken to the district court for Douglas county.

On December 9, 1940, in the district court, the defendant moved to quash the complaint on account of defects appearing on the face of the complaint. This motion and the defects pointed out will be specifically discussed later on in this opinion. On the same day a plea in abatement was filed. On December 12, 1940, the motion to quash was overruled as was also the plea in abatement. Following these rulings the defendant was arraigned and, having refused to plead, a plea of not guilty was entered. After the entry of the plea a jury was duly impaneled. At this point the defendant objected to the presentation of the prosecution by Alfred A. Raneri on the ground that he was not a deputy county attorney. This objection was sustained, whereupon the formality of his appointment was carried out and he was then, over objection of the defendant, permitted, with a regular deputy county attorney, to continue to represent the prosecution. The trial then proceeded, resulting in conviction and sentence of the defendant on the charge contained in the complaint.

From this conviction and sentence the defendant has prosecuted error to this court.

The first assignment of error presented is the ruling of the district court on defendant's motion to quash the com-

plaint. The objection is that the complaint is defective in form, and that it is improperly verified. Omitting formal parts the commencement is as follows: "The complaint and information of James T. English, county attorney, by Alfred A. Raneri, deputy of Douglas county aforesaid, made in the name of the state of Nebraska, before the judge of the municipal court, within and for the city of Omaha, in said county, this 26th day of October A. D., 1939, who, being duly sworn, on his oath says * * *." The complaint is signed and verified as follows: "James T. English, county attorney, by Alfred A. Raneri, deputy. Subscribed in my presence and sworn to before me this 26th day of October, 1939. Geo. Holmes, judge of the municipal court of the city of Omaha."

The commencement of a criminal action is by filing a criminal complaint. Section 29-404, Comp. St. 1929, is the applicable provision and is as follows: "Whenever a complaint in writing and upon oath, signed by the complainant, shall be filed with the magistrate, charging any person with the commission of an offense against the laws of this state, it shall be the duty of such magistrate to issue a warrant for the arrest of the person accused, if he shall have reasonable grounds to believe that the offense charged has been committed."

This statute applies to felonies and misdemeanors alike as becomes apparent from a reading of section 29-402, Comp. St. 1929, which is a part of the same legislative act.

In order to confer jurisdiction upon a magistrate in a criminal case, a complaint must be filed agreeable to the provisions of this section of the statute. *White v. State*, 28 Neb. 341, 44 N. W. 443. This rule is supported by the decisions of other jurisdictions. *Ex parte Burford*, 3 Cranch (U. S.) *448, 2 L. Ed. 495; *Curl v. People*, 53 Colo. 578, 127 Pac. 951; *Bissell v. Gold*, 1 Wend. (N. Y.) 210. There is sound reason for the rule which received the recognition of the common law. The reasoning is well stated in 4 Am. Jur. 11, sec. 11, as follows: "To prevent illegal restraint for trivial causes, the general rule of the common law is that, except where the gravity of the offense seems to justify an

immediate arrest without a warrant, or a crime has been committed in the presence of the officer or person making the arrest, no arrest may lawfully be made until a warrant has been issued after formal charge filed with a magistrate or court having jurisdiction of the subject-matter. No arrest for a misdemeanor committed outside the presence of the one complaining should be made without a warrant based on a proper affidavit."

As will be observed there must be a complaint which must be in writing. The complaint must also be on the oath of the complainant. Certain of these essentials were in no sense complied with. It is sufficiently clear that James T. English, described as county attorney, is the complainant. It is also clear that the complaint is neither signed by him nor on his oath. On the face of the complaint it appears conclusively that all of the mechanics of signing and taking oath were performed for the complainant by Alfred A. Raneri who was described as a deputy county attorney.

The requirements of the statute in question were not satisfied by the taking of an oath for James T. English by Alfred A. Raneri. There was no legal oath. This court in *Pumphrey v. State*, 84 Neb. 636, 122 N. W. 19, has approved Bouvier's definition of an oath as "an outward pledge given by the person taking it that his attestation or promise is made under an immediate sense of his responsibility to God." The complaint was on its face clearly defective.

In the municipal court no objection was raised as to the form or sufficiency of the complaint, and the defendant was duly and regularly arraigned and proceeded to trial. In that court he waived the defect. The question now arises, having waived the defects apparent on the face of the complaint in the municipal court, did he have the right to raise the question on his appeal to the district court?

This question is answered by section 29-613, Comp. St. 1929, which is as follows: "The district court shall hear and determine any cause brought by appeal from a magistrate upon the original complaint, unless such complaint shall be found insufficient or defective, in which event the court, at

any stage of the proceedings, shall order a new complaint to be filed therein, and the case shall proceed thereon the same in all respects as if the original complaint had not been set aside."

It necessarily follows that, on attention being called to the defective complaint in question by motion to quash before plea, it became the duty of the district court to order a new and proper complaint to be filed, and thereafter to proceed with the trial on such new complaint.

Another error assigned is that the court erred in allowing Alfred A. Raneri to conduct the prosecution, it being asserted that he was not a duly and regularly qualified deputy county attorney. This objection is without merit. In the first place, Alfred A. Raneri, under the record presented here, was a *de facto* deputy county attorney, and his right to act in the capacity outlined herein was not triable under a plea in abatement. *Gragg v. State*, 112 Neb. 732, 201 N. W. 338.

The other errors complained of are directed to the sufficiency of the evidence to sustain a conviction. It would be an usurpation of power for this court to pass upon the sufficiency of this evidence in advance of its presentation to a jury upon a proper and sufficient complaint.

The district court should have sustained the motion of defendant to quash and should have ordered the filing of a proper and sufficient complaint.

We conclude, therefore, that the conviction of the defendant should be, and it is, reversed and the cause is remanded, with directions to proceed in compliance with the law as set forth herein.

REVERSED.

PAINE, J., dissenting.

The last portion of section 29-2308, Comp. St. 1929, reads as follows: "No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an

examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

This law has been in force since 1921, and I desire to set out some of the facts in this record, and then submit the question whether this is not the exact situation for which this law was designed in order to avoid a miscarriage of justice.

In the case at bar, it is disclosed that on October 18, 1939, the return to the search warrant issued in this case recited that a number of Saratoga slot machines, race horse machines, Chuck-a-Luck dice games, and other gambling paraphernalia had been seized by the police force of Omaha.

On October 26, 1939, a complaint was filed, which read, "The complaint and information of James T. English, county attorney, by Alfred A. Raneri, deputy of Douglas county aforesaid," which complaint was signed and sworn to by Alfred A. Raneri under the form above set out before George Holmes, judge of the municipal court of the city of Omaha.

The defendant was arrested and brought into court and, having waived any defect appearing on the face of the complaint, was regularly arraigned and pleaded not guilty, and trial was had. Thirteen witnesses were examined. He was adjudged guilty by the court and fined $500 and sentenced to three months in the county jail by the municipal judge, Dennis E. O'Brien.

The bill of exceptions in this case shows that on December 12, 1940, this case came on for trial before Henry J. Beal, one of the district judges, and a jury. The attorney for defendant before arraignment moved the court to discharge the defendant upon several grounds, principally because Alfred A. Raneri, who signed the complaint as deputy county attorney, is not a deputy county attorney of said county, and that he has never given a bond as required by law, and in support of said motion Alfred A. Raneri was called to the witness-stand and testified that he was city prosecutor, and assistant city attorney, and deputy county attorney, by appointment of James T. English, county attorney, in writing, but admitted that he had never filed a bond.

Thereupon, Rudolph Tesar was called as a witness and testified that he had been deputy county attorney for six years. He was asked if Alfred A. Raneri was a deputy county attorney and testified that he was a special deputy county attorney, assigned to the police station.

A recess was thereupon taken until 2 o'clock, and counsel for defendant examined Alfred A. Raneri further as a witness. He stated that his written appointment from James T. English was dated July 18, 1939, and was a general delegation of power. When asked to give a rough idea of how many cases he handled for the county, he stated that one-half of the cases he handled in police court were state cases under state complaints, and that they would run to between 150 and 200 cases a week, and upon cross-examination stated that he handled state complaints in misdemeanor cases as a deputy county attorney, and had been in the performance of such duties since his appointment, and had signed all of these complaints in the same manner.

A recess was then taken until 3:40 o'clock, at which time the defendant was called before the court for arraignment. Objection was made by his counsel that there was no valid or sufficient complaint filed, and that Alfred A. Raneri is not a deputy county attorney, and has no right to use the name. Defendant stood mute when the complaint was read to him.

Eighteen men were called into the box as prospective jurors, and thereupon the defendant's counsel objected to Alfred A. Raneri proceeding with the impaneling of the jury on the part of the state. The court sustained the motion, and James T. English, county attorney, proceeded to impanel the jury, and thereafter court adjourned until Friday, December 13, 1940, at which time the jury, having been duly impaneled and sworn, were excused from the room.

County attorney James T. English thereupon made a statement to the court that, as objection had been made to Mr. Raneri proceeding with the trial because he had not posted a bond, he now informed the court that he had now furnished bond, and such bond was introduced in evidence

as exhibit No. 1, in the sum of $1,000, running to the county of Douglas, and signed by Alfred A. Raneri as principal and the Fidelity & Deposit Company of Maryland as surety. On the back of said bond appears the signature of Alfred A. Raneri to a short oath, and also to a much longer oath to the effect that he will faithfully discharge the duties of deputy county attorney, and on the same day said bond was duly approved by Willis G. Sears, one of the district judges of Douglas county, and said bond bears the filing mark showing it was filed by the county clerk on the same day, December 13, 1940.

Thereupon, counsel for the defendant enters a long objection to the appointment of Alfred A. Raneri, and to the bond, being exhibit No. 1, and insists that the bond must be approved by the county commissioners. However, section 26-904, Comp. St. 1929, provides that the bond shall be approved by the judge in district court, therefore the motion is overruled, and the bond is received in evidence. Thereupon, the jury were called into the room, and the trial proceeded with the introduction of evidence.

Alfred A. Raneri, as deputy county attorney, thereafter conducted the case in the district court, the bill of exceptions consisting of some 318 pages of the evidence of the witnesses as to the connection of the defendant with the gambling machines, the evidence disclosing that the defendant operated a concern known as the Central Distributing Company, at 1462 South Thirteenth street, which place was raided under the search warrant, and a large number of machines were found, and also keys which fitted machines placed in various establishments in Omaha.

The evidence of William H. Graham shows that he was employed in the editorial department of the Omaha World-Herald, and visited a number of places where Saratoga machines were installed, and saw machines in operation; that he played one of these machines in Roy La Rue's establishment between Twenty-third and Twenty-fourth streets on Ames avenue, and spent 80 cents, struck a winning combination on the slot machine, and received 15 cents; that at

Sharley's Club he saw many people playing the slot machine, and when they resulted in a winning combination they paid out in nickels. The 15 cents for winning was paid by the bartender. At the establishment of Charlie Hutter, 2322 N street, he played somewhere between $1 and $1.50, and got back 15 cents.

Mr. Graham testified that it was a part of his job to study these slot machines; that he had seen the insides of a large number of them during the Hopkins administration, when some 500 of them were in the courthouse, and since sheriff Dorrance came in, Graham testified, he had examined and done a little work on perhaps 50 of them, and then he gave definite testimony as to how the machine, exhibit No. 5, taken out of Roy La Rue's place, worked. He said it was a slot machine manufactured by the Pace Manufacturing Company of Chicago.

The evidence disclosed that, when the defendant's employee went to these establishments in a pick-up truck licensed in the defendant's name, the nickels were poured out and divided, the bartender taking half of them and the defendant's agent taking the balance away with him.

With this statement of the facts before us, may we examine the law. We find in *Gragg v. State,* 112 Neb. 732, 201 N. W. 338, a plea in abatement was filed, charging that the pretended acts as county attorney were without authority of law and of no force and effect. The record shows that the appointment was regular, but he did not take the official oath, nor file a bond, but he had performed the duties of county attorney, and had been recognized as county attorney. The plea in abatement was overruled, and this court held that, where one is regularly employed to act, and is performing the duties of a county attorney, even though he has not given the statutory bond, or taken the required oath, such person is a county attorney *de facto.* At page 736 the court has this to say: "However, the title to a public office cannot be collaterally attacked, nor can it be determined under a plea in abatement, but ordinarily by *quo warranto.* 32 Cyc. 691."

In the case of *Baker v. State,* 112 Neb. 654, 200 N. W. 876, in which a deputy county treasurer was charged with embezzling money, it was contended that his conviction could not stand because he had not taken the oath nor filed the bond, but this court affirmed the judgment sentencing him to the penitentiary.

Professor Lester B. Orfield, author of a recent text-book, "Criminal Appeals in America," and a member of the commission just appointed by the United States supreme court to prepare a new criminal code, in an article in 13 Neb. Law Bulletin, beginning at page 179, in discussing a similar reversal on a technicality by this court in another case, says:

"The effect of section 29-2308, Neb. Comp. Stat. 1929, would seem to be to require affirmance here. This statute, adopted in 1921, is designed to prevent reversals for purely technical reasons. This of course does not mean that every case must be affirmed merely on a showing of guilt of the defendant. The statute does not strip the defendant of his constitutional rights, such as trial by jury, a public trial, and the privilege of immunity from self-incrimination. The statute does not do away with rights granted to defendants by the Constitution. Further than that it would seem to guarantee the defendant a fair trial. Apparent technicalities may prevent a fair trial in particular cases and defendants should be allowed to show that they have so prevented. But where no harm was done by the error the decision should be affirmed. Cases were once frequently reversed for slips in indictments. The statute would seem among other things to be aimed at such reversals. * * * In many cases of reversal, defendant is never brought to trial again, or if retried, is acquitted though the reversal was for purely technical reasons."

To sum up the matter, it appears that Alfred A. Raneri was duly appointed a deputy county attorney in writing on July 18, 1939, and filed more than 100 state complaints a week on an average, signing them the same as he signed the complaint in question; that counsel for the defendant in this case, in making a multitude of objections, happened to strike

the objection that Mr. Raneri had never filed a bond, which, it seems, through an oversight had been neglected. The next day, when the trial began, Mr. English, having stated that he knew nothing about the details of this case, showed to the court that since adjournment Mr. Raneri had filed the required bond, the same had been duly approved by a district judge, and filed with the county clerk, and thereafter Mr. Raneri conducted the case.

It appears to me that this oversight in neglecting to file a bond was not in any way prejudicial to the defendant. A raid was made on his establishment, and he was found in charge of the handling and management of these illegal gambling machines, and of keys which fitted those in many establishments.

Large numbers of witnesses testified in this case, which was tried in December, 1940. By the reversal of a case of this nature, and sending it back for retrial, it will ordinarily be found that it is difficult or impossible to secure these same witnesses, and, as happened in other similar cases, such a defendant will either not be brought to trial again, or, if brought to trial, by the impossibility of securing all of the witnesses he will be acquitted by the jury, although the evidence in this case sustains the verdict of the jury that he was guilty of the offenses charged.

In my opinion, the defendant in the case at bar was not deprived of his liberty without due process of law, as promised in section 3, art. I of the Constitution. He has been given a fair and impartial trial by a jury, as promised in section 6, art. I of our Constitution. He has faced the witnesses testifying against him, as required by section 11, art. I of our Constitution, and these witnesses gave such overwhelming and convincing evidence that the jury promtly returned a verdict of guilty.

I adopt the language of Judge Rose in his dissenting opinion in *Cooper v. State,* 120 Neb. 598, 234 N. W. 406, and close this dissent with his words: "I made 'an examination of the entire cause,' and I say with conviction there was no prejudicial error or miscarriage of justice in the proceed-

ings and sentence. Under the evidence a verdict of not guilty would have been a travesty on justice and a reproach to the law."