Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/26/2016 09:06 AM CDT

State of Nebraska, appellee, v.
Cletus S. Alford, appellant.
___ N.W.2d ___

Filed July 26, 2016.    No. A-15-527.

1. **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.

2. **Criminal Law: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

3. ____: ____: ____. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

4. **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.

5. **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.

6. ____: ____. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

7. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

8. ____: ____. An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result.

9. **Criminal Law: Plea in Abatement.** A defective verification is subject to a motion to quash or a plea in abatement.

10. **Criminal Law: Pleadings: Waiver.** A defendant who pleads the general issue without raising the question waives the defect.

11. **Criminal Law: Pleas: Plea in Abatement: Waiver.** A plea of not guilty ordinarily waives all matters which might have been raised by a motion to quash or a plea in abatement.

12. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

13. **Criminal Law: Lesser-Included Offenses: Jury Instructions.** In non-homicide cases, a trial court must instruct on a lesser-included offense only if requested to do so.

14. **Criminal Law: Directed Verdict.** In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained.

15. **Directed Verdict.** If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed.

16. **Postconviction: Effectiveness of Counsel: Records: Appeal and Error.** In order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review.

17. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

18. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

19. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

20. ____: ____. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

21. ____: ____. To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

22. **Effectiveness of Counsel: Presumptions: Appeal and Error.** The entire effectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. Deficient performance and prejudice can be addressed in either order.

23. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

24. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

After a jury trial, Cletus S. Alford was convicted of second degree assault, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. Alford appeals his convictions and sentences. For the reasons that follow, we affirm.

## II. PROCEDURAL BACKGROUND

On June 22, 2010, Alford was charged by complaint in the county court for Douglas County with second degree assault, a

Class III felony; use of a deadly weapon to commit a felony, a Class II felony; and possession of a deadly weapon by a prohibited person, a Class III felony. On June 30, Alford appeared before the county court and entered pleas of not guilty to all counts. A preliminary hearing was held, and the county court found probable cause to believe Alford had committed the offenses charged. The matter was bound over to the district court for Douglas County.

On July 1, 2010, Alford was charged by information in the district court. It was alleged that he had committed the same three criminal offenses charged in the original complaints. Alford entered pleas of not guilty to all charges.

A jury trial was held on November 1 and 2, 2010. At the conclusion of the evidence, a jury instruction conference was held. Alford did not request that the district court instruct the jury that third degree assault was a lesser-included offense of second degree assault. The case was submitted to the jury, which returned guilty verdicts on all counts. The district court accepted the jury's verdicts and sentencing was held on December 17, 2010. The district court sentenced Alford to 5 to 5 years' imprisonment for each conviction, and it ordered the three sentences to run consecutively to one another and to a sentence previously imposed. Alford received credit for 178 days served.

Alford filed a motion for postconviction relief alleging that he received ineffective assistance of counsel for failure to file a direct appeal within 30 days after sentencing. After an evidentiary hearing on the sole issue of whether trial counsel was ineffective for failure to file a direct appeal, the district court granted a new direct appeal. Alford timely filed this action.

## III. FACTUAL BACKGROUND

Approximately 1 month prior to the offenses charged, Detwone Smith, his girlfriend Megan Marie Odle, and her 3-year-old son moved into an apartment building in Omaha.

They shared an apartment on the third floor of the building with KýAra Williams. Alford is Odle's ex-boyfriend, and the move was undertaken in an effort to avoid further contact with Alford, who had been harassing Odle.

On June 21, 2010, Smith, Odle, and her son left the apartment to go to the grocery store. When they reached the car, they discovered that they had left the car keys upstairs, and Odle returned to get them while Smith and Odle's son waited in the car. Odle testified that she was pushed against a wall inside the apartment building by Alford, and he held her there demanding to speak to her. Odle yelled to Williams for help. Williams was inside of the apartment and responded. Once she saw what was happening, she pulled Alford away from Odle. Williams testified that she was able to clearly see Alford's hands on Odle's mouth and throat and that there was nothing on or in his hands at the time. Alford followed Odle and Williams to the apartment, where he begged the women not to call the police. After a few minutes, Alford left. Odle attempted to call Smith, and when he did not answer, Williams went down the stairs to check on him. Odle stayed in the apartment to calm down after the confrontation.

Smith testified that he and Odle's son returned to the apartment building to look for Odle, because she had been gone for 11 to 12 minutes. Smith saw someone walking down the stairs of the apartment building. When Smith reached the bottom of the flight of stairs that Alford was descending, Smith recognized him. Smith was immediately concerned for Odle's safety. Alford demanded that Smith hand Odle's son over to him, but Smith did not comply. He testified that Alford punched him twice on the side of the face with his bare fist and that the second punch knocked him to the ground. Smith said Alford reached into his pocket and slipped on a pair of brass knuckles. He described the brass knuckles as being silver and bulky, stretching all the way across Alford's fingers with a metal bar along the bottom. He noted there were jagged pieces of metal around each knuckle. Smith testified

that he had no doubt Alford used brass knuckles because he had seen brass knuckles before, and he clearly saw brass knuckles on Alford's hand.

Alford grabbed Smith by the hair with his left hand and began punching him in the face with his right hand. Smith partially blocked many of Alford's punches, but one punch clipped Smith's lower lip and tore it open, causing blood to immediately flow from the wound. Smith testified that one punch landed squarely on his forehead. He said the punches after Alford put on the brass knuckles felt as if they had been amplified "times like 50."

Williams was present for part of the assault, removing Odle's son from Smith's arms and taking him to safety. Alford continued to throw punches at Smith until Williams called the police. Williams could not testify with certainty that Alford had punched Smith with brass knuckles, but she saw something shiny on his hand. Williams testified that there had been nothing in or on Alford's hand moments earlier when she saw his hands on Odle's neck.

After Alford left the building, Smith crawled to the landing of the second floor, where he collapsed. Odle came down the stairs to find Smith bloody and motionless. She testified that she thought he was dead because he did not respond when she spoke to him. She said that immediately after the attack, Smith was "out of it," mumbling, and disoriented. She asked him whether he had been shot, and Smith responded, "He hit me with brass." Smith also told the paramedics and the police that he had been hit with brass knuckles.

Smith was transported to a hospital where he underwent a CT scan and x rays. Smith sustained a concussion, a large bump on his forehead, swelling on both sides of his face, fractures to his nose and jaw, a jagged cut on his lower lip, and various scrapes and bruises on his face, arms, and back. The cut on Smith's lower lip required 12 stitches, and a portion of his lip had been torn off. In the days immediately following the assault, Smith's face became increasingly

swollen and sore, and he had difficulty opening his mouth and chewing. Odle testified that the damage looked worse in person than it appears in the photographs taken on the day of the assault.

## IV. ASSIGNMENTS OF ERROR

Alford asserts the district court erred in (1) not dismissing this matter due to defects in charging and the complaint, (2) not properly instructing the jury regarding a lesser-included offense, and (3) overruling his motion for directed verdict. He also asserts there was insufficient evidence to support his convictions, that he received ineffective assistance of counsel, and that the trial court abused its discretion in imposing excessive sentences.

## V. STANDARD OF REVIEW

[1] Whether jury instructions given by a trial court are correct is a question of law. *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015).

[2,3] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

[4-6] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. DeJong*, 292 Neb. 305, 872 N.W.2d 275 (2015). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's

performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. DeJong, supra*.

[7,8] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Trice*, 292 Neb. 482, 874 N.W.2d 286 (2016). An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *Id.*

## VI. ANALYSIS

### 1. Defects in Complaint

Alford asserts the district court erred in not dismissing the matter for fatal defects in the arrest and charging. He argues that the court lacked jurisdiction and that he was deprived of constitutional rights because the original arrest warrant was issued upon an insufficient criminal complaint and because there was no probable cause for his arrest.

Criminal complaints were filed in the county court for Douglas County on June 22, 2010, alleging three criminal violations: second degree assault, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. On June 30, Alford appeared before the county court and entered pleas of not guilty. The matter was bound over to the district court for Douglas County. An information was filed on July 1, charging Alford with the same three criminal counts.

Alford's argument is somewhat unclear, but it appears that he argues that the complaints filed in the county court were invalid because they were filed by an Omaha police officer and not signed on the oath of the victim, Smith. He further argues that the complaints were not valid because they were

not notarized by the clerk of the county court at the time of filing.

Alford has cited no authority requiring the district court to review the sufficiency of the complaints filed in county court after the matter has been bound over and charged by information.

As noted in the State's brief, Alford's argument is taken almost verbatim from *Morrow v. State*, 140 Neb. 592, 300 N.W. 843 (1941), in which the Nebraska Supreme Court found it was the duty of the district court to order a new and proper complaint to be filed due to defects in the complaint. However, in that case, a motion to quash was filed, calling attention to the defective complaint, a procedural step which was not taken in this case.

[9-11] A defective verification is subject to a motion to quash or a plea in abatement. *State v. Gilman*, 181 Neb. 390, 148 N.W.2d 847 (1967). A defendant who pleads the general issue without raising the question, however, waives the defect. *Id.* A plea of not guilty ordinarily waives all matters which might have been raised by a motion to quash or a plea in abatement. *State v. Moss*, 182 Neb. 502, 155 N.W.2d 435 (1968).

The district court's jurisdiction was based upon the information filed on July 1, 2010, in the district court, not the complaints filed on June 22 in the county court. The information filed in the district court was filed by the prosecuting attorney, and notarized by a deputy clerk of the district court, fulfilling the requirements of Neb. Rev. Stat. § 29-404 (Reissue 2008). Alford filed a written waiver of physical appearance on July 2, in which he asked the court to enter pleas of not guilty on his behalf. Any defects appearing in the information before the district court were waived when Alford entered pleas of not guilty to the charges. See *State v. Jones*, 254 Neb. 212, 575 N.W.2d 156 (1998) (objections to verification are waived if not made before arraignment and plea), *disapproved on other grounds, State v. Silvers*, 255

Neb. 702, 587 N.W.2d 325 (1998). This assignment of error is without merit.

[12] Alford asserts, but does not argue, that the district court erred in failing to dismiss this case because the arrest warrant was issued without probable cause. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016). Therefore, we do not address this assertion.

### 2. Jury Instructions

Alford asserts the district court erred by failing to instruct the jury that third degree assault was a lesser-included offense of second degree assault. He asserts the district court was obligated to give the lesser-included instruction regardless of whether it was requested.

[13] In *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012), the Nebraska Supreme Court traced the history of case law regarding lesser-included offenses. Although the court noted some inconsistency in the language used, it concluded that, in general, since the decision in *McIntyre v. State*, 116 Neb. 600, 218 N.W. 401 (1928), the case law has been consistent that in nonhomicide cases, "a trial court must instruct on a lesser-included offense only if requested to do so." *State v. Smith*, 284 Neb. at 651, 822 N.W.2d at 413. See, *State v. Sinica*, 277 Neb. 629, 764 N.W.2d 111 (2009) (child abuse); *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008) (possession of controlled substance); *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993) (assault). See, also, *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016) (although homicide case, Nebraska Supreme Court noted it had clarified in *State v. Smith, supra*, that in nonhomicide cases, trial court does not have duty to instruct on lesser-included offenses unless defendant requests instruction).

We find the trial court did not err when it did not give an instruction stating that third degree assault is a lesser-included

offense of second degree assault because the instruction was not requested.

### 3. Sufficiency of Evidence

Alford asserts that the district court erred in denying his motion for directed verdict and that the jury erred in finding there was sufficient evidence to find him guilty beyond a reasonable doubt. In his brief, he argues these two assignments together, challenging the sufficiency of the evidence to support his convictions.

Alford was charged with (1) assault in the second degree, a felony under Neb. Rev. Stat. § 28-309 (Supp. 2009); (2) use of a deadly weapon to commit a felony under Neb. Rev. Stat. § 28-1205 (Cum. Supp. 2014); and (3) possession of a deadly weapon by a prohibited person under Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2014).

Section 28-309(1)(a) states that a person commits the offense of assault in the second degree if he or she intentionally or knowingly causes bodily injury to another person with a dangerous instrument. Neb. Rev. Stat. § 28-109(4) (Reissue 2008) defines bodily injury to mean "physical pain, illness, or any impairment of physical condition."

Any person who uses a firearm, a knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony. § 28-1205.

Any person who possesses a firearm or brass or iron knuckles and who has previously been convicted of a felony commits the offense of possession of a deadly weapon by a prohibited person. § 28-1206.

The parties stipulated that Alford was a convicted felon. Multiple witnesses testified that Alford assaulted Smith at the apartment building on June 21, 2010, and this evidence was not disputed. The primary dispute was whether Alford used brass knuckles during the assault. Smith testified that Alford

repeatedly punched him with brass knuckles. Smith's testimony was corroborated by Williams, who witnessed a portion of the assault. Williams testified that she saw Alford's hands moments before the assault. She noted that during the assault she saw something shiny on Alford's hand, which had not been there moments before.

Smith testified that he suffered a concussion, bone fractures, a jagged cut on his lower lip, a black eye, swelling to his face, and pain. He testified that Alford punched him a few times and that he then saw Alford reach down and slip something on his hand. He testified that he saw brass knuckles and that he tried to block Alford's punches. He said the subsequent blows, after Alford put on the brass knuckles, felt as if they had been amplified "times like 50." Though Williams was unclear whether brass knuckles were used, Smith's testimony and the nature and extent of Smith's injuries, viewed and construed in the light most favorable to the prosecution, is sufficient to support a finding that Alford possessed and used brass knuckles. We find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and that thus, the trial court did not err in accepting the jury's verdicts.

[14,15] In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Glazebrook*, 22 Neb. App. 621, 859 N.W.2d 341 (2015). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

Having found that there was sufficient evidence to support the jury's convictions, we find there was also sufficient evidence for the trial court to overrule Alford's motion for directed verdict. Thus, the trial court did not err.

### 4. Ineffective Assistance
of Counsel

[16] In order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013). Alford raises seven instances of alleged ineffective assistance of counsel, which we discuss below.

[17,18] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.* As discussed below, the record is not sufficient to address several of Alford's claims.

[19-22] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Morgan, supra*. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. The entire effectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. Deficient performance and prejudice can be addressed in either order. *Id.* We now address the claims of ineffectiveness raised by Alford.

### (a) Failure to File Motion to Quash

As previously discussed, Alford asserts that the trial court lacked jurisdiction because there was insufficient probable cause for a warrant and the complaint was insufficient. Alford asserts that trial counsel's failure to file a motion to quash prejudiced him by "allowing the State to take him to trial on a warrant and complaint that was not legally sufficient and in violation of his constitutional rights." Brief for appellant at 29.

Alford fails to show how he was prejudiced by trial counsel's failure to file a motion to quash, alleging the complaints were improperly verified. Even if Alford's counsel had filed a motion to quash the complaints, and even if the motion was sustained, the State could have easily remedied the defects by filing a new complaint. We find Alford was not prejudiced by the actions of his trial counsel, and this assignment of error is without merit. See *State v. Jones*, 254 Neb. 212, 575 N.W.2d 156 (1998).

### (b) Assignments of Error Not Reviewable on Direct Appeal

Alford asserts that trial counsel was deficient for failing to request an instruction on third degree assault as a lesser-included offense of second degree assault. He argues that if this instruction had been given, the jury would have been presented with a "full range of possible verdicts," and that there is a reasonable probability the verdict would have been different. Brief for appellant at 28.

The State asserts that this claim cannot be resolved on the record before this court. It is possible that trial counsel did not request an instruction for the lesser-included offense of third degree assault for a strategic reason. Section 28-309(1)(a) states that a person commits the offense of assault in the second degree if he or she intentionally or knowingly causes bodily injury to another person with a dangerous instrument. Neb. Rev. Stat. § 28-310 (Reissue 2008) states that a person

commits the offense of assault in the third degree if he intentionally, knowingly, or recklessly causes bodily injury to another person or threatens another in a menacing manner.

Each of the charges against Alford were based upon the presence and use of brass knuckles. If the lesser-included instruction was not given, and if the jury determined that brass knuckles were not used, then the jury would have no choice but to find Alford was not guilty of second degree assault, or any assault in general. Upon our review, we find that this assertion requires an evaluation of counsel's trial strategy, for which the record is insufficient. See *State v. Brooks*, 23 Neb. App. 560, 873 N.W.2d 460 (2016). Thus, we do not address the merits of this assignment of error.

Alford also asserts his trial counsel was deficient because counsel failed to take specific actions that Alford requested related to his defense. Specifically, he asserts that he asked trial counsel to (1) introduce medical records which would show the injuries Smith sustained were not significant; (2) take Smith's deposition prior to trial; (3) investigate, depose, and call as witnesses all medical personnel who treated Smith for any injuries; (4) consult with an expert to discuss the extent of the injuries Smith sustained; and (5) call Alford as a witness to refute Smith's testimony.

The record does not show whether depositions were taken or medical records obtained, and Alford's assertions require an evaluation of counsel's trial strategy, for which the record is insufficient. We make no comment whether Alford's allegations regarding these claims would be sufficient to require an evidentiary hearing in the context of a motion for postconviction relief. We simply decline to reach these claims on direct appeal, because the record is insufficient to do so. See *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013).

### 5. Excessive Sentences

Alford asserts the sentences imposed were excessive, because his convictions for the charged offenses were the

result of "inadequate defense and bad jury instructions." Brief for appellant at 33. He argues that the sentences should fit the offender and that the court abused its discretion in imposing excessive sentences.

[23] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Trice*, 292 Neb. 482, 874 N.W.2d 286 (2016).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id.* An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *Id.*

[24] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *State v. Casillas*, 279 Neb. 820, 782 N.W.2d 882 (2010).

Alford was convicted of one Class II felony and two Class III felonies. The possible penalty for a Class II felony is 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 2008). The possible penalty for a Class III felony is a maximum of 20 years' imprisonment, a $25,000 fine, or both. § 28-105. Alford was sentenced to 5 to 5 years' imprisonment for each conviction, to be served consecutively. The sentences imposed were well within the statutory guidelines.

There is nothing in the record to suggest the district court failed to consider any of the relevant factors in determining the appropriate sentences for Alford. Witnesses testified regarding the nature of the offenses and the amount of violence involved in the commission of the crimes, including the use of

brass knuckles. The presentence investigation report prepared and provided to the district court included information regarding Alford's age, mentality, education and experience, and criminal conduct, and Alford was given the opportunity to be heard regarding the motivation for his offenses.

Having reviewed the record and the presentence investigation report, we find no evidence that the trial court abused its discretion in imposing sentences within the statutory limits.

## VII. CONCLUSION

For the reasons stated herein, we affirm the convictions and the sentences imposed by the district court.

AFFIRMED.

RIEDMANN, Judge, participating on briefs.